IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | | |
|---|---|---|
| KARA L. MATTHEWS, | ) | CV-17-66-GF-BMM-JTJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND |
| | ) | RECOMMENDATIONS |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## I.  SYNOPSIS

Kara L. Matthews ("Ms. Matthews") seeks disability benefits under the

Social Security Act.  The Social Security Administration determined that although

she has severe impairments she is capable of performing past relevant work as a bus

monitor and a housing inspector, as well as other work that exists in significant

numbers in the national economy, and therefore is not entitled to benefits.  That

determination is not supported by substantial evidence and is based on legal error.

Therefore, as set forth below, Ms. Matthews's Motion for Summary Judgment

should be granted with respect to the ALJ's credibility determination and Dr.

Miller's negative statements, and remanded for further proceedings.  Ms. Matthews'

motion should be denied in all other respects.

1

## II.  JURISDICTION

Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g) (2015).  The case is assigned to United States District Court Judge Brian Morris and referred to the undersigned to submit findings and recommendations on dispositive motions. (Doc. 6)  Venue in the Great Falls Division of the District of Montana is proper because Ms. Matthews resides in Cascade County, Montana.  (Doc. 1 at 1-2); 42 U.S.C. 405(g); Local Rule 1.2(c)(2).

## III.  STATUS

Ms. Matthews applied for Security Disability Insurance Benefits on March 14, 2012, alleging a disability onset date of March 30, 2011.  The Social Security Administration initially denied her claim in an undated decision (Doc. 5 at 176-78), and upon reconsideration on April 4, 2013. (Doc. 5 at 183-84).  On May 5, 2013, Ms. Matthews timely filed a written request for a hearing before an administrative law judge ("ALJ").  (Doc. 5 at 185).  The ALJ held a hearing on February 19, 2014. (Doc. 5 at 39-78).

The ALJ rendered a decision denying Ms. Matthews's claim on March 7, 2014.  (Doc. 5 at 154-65)  Ms. Matthews timely requested that the Social Security Administration review the ALJ's denial of her claim on May 6, 2014.  (Doc. 5 at 13).  The Appeals Council for Social Security Administration granted Ms.

2

Matthews's request for review and remanded the matter on November 16, 2015. (Doc. 5 at 170-75).   On March 10, 2016, Ms. Matthews appeared before ALJ Michele Kelly.  (Doc. 5 at 79-120).  The ALJ issued an unfavorable decision on December 21, 2016.  (Doc. 5 at 19-30).  On February 2, 2017, Ms. Matthews filed a request for review.  (Doc. 5 at 304-05).  In its Notice on May 16, 2017, the Appeals Council denied Ms. Matthews's request for review, making the ALJ's decision is the final decision of the Commissioner.  (Doc. 5 at 1-6).

On October 24, 2017, Ms. Matthews filed an opening brief requesting the Commissioner's decision be reversed and remanded.  (Doc. 8).  On December 29, 2017, the Commissioner filed a response brief, and Ms. Matthews filed a reply brief on January 10, 2018.  (Docs. 12-13).

## IV.  STANDARDS

### A.    Court's role

Review in this case is limited.  The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error.  *Maounis v. Sheckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence has also been described as "more than a

mere scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health and Hum. Services*, 846 F.2d 573, 576 (9th Cir. 1988).

The district court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Green v. Sheckler*, 803 F.2d 528, 530 (9th Cir. 1986). The Court may reject the findings not supported by the record, but it may not substitute its findings for those of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

**B.     Disability criteria**

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that: (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months"; and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A)-(B)).

The SSA regulations provide a five-step sequential evaluation process for

4

determining whether a claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920.  The five steps of the inquiry are:

1.  Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. See 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.  Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. See 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.  Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. See 20 C.F.R. §§ 404.1520(d), 416.920(d).

4.  Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. See 20 C.F.R. §§ 404.1520(e), 416.920(e).

5.  Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. See 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Id*. at 954.  The claimant has the burden of proof for steps one through four, and the Commissioner has the burden of proof for step five.  *Id.*

## V.  BACKGROUND

### A.  Ms. Matthews' Hearing Testimony

Ms. Matthews testified at her October 20, 2016, hearing before the ALJ.

(Doc. 5 at 81-112).  Ms. Matthews testified that she has extreme pain in her low back that "gets worse"with walking, sitting too long, standing, trying "to do" groceries, trying to cook, trying to stand in the shower, and almost everything.  (*Id.* at 87).

Ms. Matthews also testified that she has diabetic neuropathy that causes her to experience shooting, tingling pain in her legs and feet along with episodes of numbness resulting in her being unable to feel her legs.  (*Id.* at 88-89).  She testified that she cannot sit for more than 30 minutes before she has to stand for at least five minutes.  (*Id.* at 89).  She testified that when sitting she has to have her left leg elevated in an effort to decrease her pain.  (*Id.* at 90).  She further testified that when sitting she has to put all of her weight on her right side because of the pain she experiences in her left leg.  (*Id.*)

Ms. Matthews testified that has problems with standing caused by her experiencing shooting pain from her low back into her legs and then her legs going numb.  (*Id.* at 91).  She also testified that when standing she has to lean against something because she feels insecure on her fee and that she can only stand for about one minute before she starts to feel insecure on her feet.  (*Id.* at 91-92).

Ms. Matthews testified that she has difficulty walking because the numbness in her legs makes it seem as though her legs are not there.   (*Id.* at 92).  She testified

that she cannot walk without assistance and even with assistance she can only walk for ten minutes.  (*Id.* at 93).

Ms. Matthews testified that she has problems with lifting and carrying items because these movements cause her to experience a pulling in her lower back and butt and on her shoulders.  (*Id.* at 93-94).  She testified that for one-third of a work day she could "maybe" lift 10-15 pounds.  (*Id.* at 94).  She also testified that she has had surgery on both shoulders and that "small little things, like  scraping your windows really bothers me." (*Id.* at 95-96).

She testified that her feet swell, are cold and feel numb and this makes it hard for her to drive because she has a difficult time feeling the pedals.  (*Id.* at 96-97).

Ms. Matthews also testified that she needs help with the laundry because the washer and dryer are in the basement of where she lives but that she does the minor housekeeping like putting the dishes in the dishwasher and using a light duster that weighs five pounds.  (*Id.* at 98-99).

She testified that she can use a computer, she accesses the internet through her cellular phone, that she does not participate in activities outside the home other than going fishing on a couple of occasions which was very difficult because of the need to walk, and that she takes care of herself at home.  (*Id.* at 100-02).

Ms. Matthews testified she suffers from depression because her injuries

prevent her from working and her work was her identity.  (*Id*. at 102).  She also

testified that she does not take any medication for her depression but that she does

take medicine to treat her diabetes, a medicine to treat her cholesterol, and

hydrocodone and Gabapentin to treat the symptoms her neuropathy causes.  (*Id*.)

**B.     ALJ's Determination**

At step one, the ALJ decided that Ms. Matthews had not engaged in

substantial gainful activity since April 30, 2011, the alleged onset date of his

disability.  (Doc. 5 at 22).  At step two, the ALJ determined that Ms. Matthews has

the following severe impairments: lumbar degenerative disc disease status-post

discectomy at L4-5; peripheral neuropathy; obesity.  (*Id*.)  At step three, the ALJ

determined that Ms. Matthews did not have an impairment, or combination of

impairments, that met or was medically equal to one of the listed impairments. (*Id*.

at 23).

Before considering step four, the ALJ assessed Ms. Matthews as having the

residual functional capacity (RFC)  to perform light work as defined in 20 C.F.R. §

404.1567(b) with the following limitations: she can lift/carry/push/pull 20 pounds

occasionally and 10 pounds frequently; she can walk and/or stand about 6 hours per

8-hour workday and sit about 6 hours in an 8-hour workday; she can frequently

balance, kneel, crouch, crawl, and climb ramps/stairs; she can occasionally stoop

and climb ladders/ropes/scaffolds; and she must avoid concentrated exposure to vibrations and hazards such as unprotected heights, dangerous machinery, and wet/slippery/uneven surfaces.  (*Id.* at 25).

At step four, the ALJ determined that with her RFC, Ms. Matthews was capable of performing past relevant work as a bus monitor and housing inspector. (*Id.* at 28-29).  At step five, the ALJ made an alternative determination that, considering her age, education, work experience, and RFC, Ms. Matthews was capable of making a successful adjustment to other work that existed in significant numbers in the national economy as a bench assembler, office helper, and a photocopy machine operator.  (*Id.* at 30).  The ALJ therefore determined that Ms. Matthews has not been under a disability since April 30, 2011, the claimed onset date of her disability, through December 21, 2016, the date of the ALJ's decision. (*Id.*)

### C.     Ms. Matthews' Position:

Ms. Matthews argues the Court should reverse the Commissioner's decision and remand the case to the Commissioner for the immediate award of benefits or further hearing because:

1.     The ALJ erred in determining that her testimony concerning the intensity, persistent and limiting effect of her symptoms were not

entirely credible.  (Doc. 8 at 20-24).

2.     The ALJ erred in failing to determine that her PTSD and depression

       were severe impairments.  (*Id.* at 9, 32).

3.     The ALJ erred in evaluating the medical evidence.  (*Id.* at 19).

4.     The ALJ erred in rejecting third party statements without giving a

       germane reason for doing so.  (*Id.*)

5.     The ALJ's hypothetical to the vocational expert was erroneous because

       it failed to set forth all of her limitations.  (*Id.* at 33).

**D.     The Commissioner's Position**

The Commissioner argues that the Court should enter summary judgment in

her favor because:

1.     The ALJ properly evaluated Ms. Matthews' symptom testimony.

       (Doc. 12 at 16).

2.     The ALJ properly determined that Ms. Matthews' PTSD  was not a

       severe impairment.  (*Id.* at 5).

3.     The ALJ properly evaluated the medical evidence.  (*Id*. at 3).

4.     The ALJ properly evaluated statements from "other" sources.  (*Id*. at

       21).

5.     The ALJ hypothetical to the vocational expert was proper because it

included all of Ms. Matthews's credible limitations.  (*Id*. at 25).

## VI.  ANALYSIS

### A.    Credibility

#### 1.    Legal Standards

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' "  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  In this analysis, the claimant is not required to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996).  Nor must a claimant produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison,* 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."

*Id.* at 1014-1015 (citing *Smolen*, 80 F.3d at 1281); *see also Robbins v. SSA*, 466 F.3d 880, 883 (9th Cir.2006) ( "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").  This is not an easy requirement to meet: "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison,* 759 F.3d at 1015 (citing *Moore v. Comm'r of SSA*, 278 F.3d 920, 924 (9th Cir. 2002).  At the same time, the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  *Id.* (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 93 (9th Cir. 2015).  The ALJ must identify which testimony she found not credible and why.  *Id.*

When evaluating a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning

12

the nature, severity, and effect of the alleged symptoms.  *Thomas v. Barnhart*, 278

F.3d 947, 958-59 (9th Cir. 2002) (citing *Light v. SSA*, 119 F.3d 789, 792 (9th Cir.

1997)).  If the ALJ's credibility finding is supported by substantial evidence in the

record, the Court may not engage in second-guessing.  *Id.* (citing *Morgan v.*

*Comm'r of SSA*, 169 F.3d 595, 600 (9th Cir. 1999)).

### 2.    Analysis

According to the Commissioner, the ALJ gave the following three reasons for

discounting Ms. Matthews's symptom testimony: (1) the objective medical

evidence did not support her allegations; (2) she received conservative treatment to

treat her symptoms; (3) she had not been compliant with treatment

recommendations.  (Doc. 12 at 17-20).  Ms. Matthews argues that the ALJ erred

because the ALJ only provided general findings as opposed to specific findings and

that the ALJ's reasons are not supported by substantial evidence.  (Doc. 8 at 17-18).

The ALJ's decision reveals that she reviewed medical evidence and

summarized some of the findings based upon various physical examinations.  (Doc.

5 at 26-28).  However, the ALJ failed to specifically state which of Ms. Matthews'

statements she found to be incredible in light of the medical evidence summary she

set forth.  The same holds true with respect to the ALJ mentioning that Ms.

Matthews received conservative treatment and failed to follow some treatment

13

recommendations.  The ALJ never specifically states what statements Ms. Matthews made that are contradicted by her receiving conservative treatment or failing to follow certain treatment recommendations.  The Court is therefore left to speculate as to how the evidence set forth in the ALJ's decision specifically undermined Ms. Matthews' credibility.

The ALJ erred because she failed to point to the specific parts of Ms. Matthews' testimony she found not credible and failed to state why.  *Brown-Hunter*, 806 F.3d at 494. *See also Mangat v. Colvin*, 2017 WL 1223881, *5 (S.D. Cal. Feb. 3, 2017) ("The ALJ failed to point to specific parts of Plaintiff's testimony he discredited. This error alone is fatal to the ALJ's credibility determination"). Without the required specificity, the Court cannot meaningfully review the ALJ's decision to determine whether the ALJ arbitrarily discredited Ms. Matthews' testimony.  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."); *Brown-Hunter*, 806 F.3d at 492 ("[A]lthough we will not fault the agency merely for explaining its decision with 'less than ideal clarity,' ... we still demand that the agency set forth the reasoning behind its decision in a way that allows for meaningful review.").  The Court therefore finds that the ALJ erred

14

because her credibility determination is not supported by specific, clear, and convincing reasons.

### B.     PTSD and Depression

#### 1.     Legal Standards

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of "signs-the results of 'medically acceptable clinical diagnostic techniques,' such as tests-as well as symptoms," of a claimant's own perception or description of his physical or mental impairment.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).  A claimant's own statement of symptoms alone is not enough to establish a medically determinable impairment.  *See* 20 C.F.R. §§ 404.1508, 416.908.

Step two of the five-step sequential inquiry imposes a *de minimis* screening device to dispose of groundless claims.  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe."  *Id.*  An impairment is found "not severe" at this step when medical

15

evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.  *Id.*  An impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities."  *Id.* at 1290.  Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling."  *Id.*  The claimant bears the burden of establishing the existence of a severe impairment.  *Bowen v. Eckert*, 482 U.S. 137, 146 (1987).

### 2. Analysis

Under the "Statement of Issues" section of her brief, Ms. Matthews states that the ALJ "erred in failing to incorporate PTSD as an impairment."  (Doc. 8 at 6). However, Mr. Matthews failed to provide any argument in support of her claim other than to offer the bald statements that the ALJ erred when she "failed to include," "ignor[ed]" or "fail[ed] to consider" her PTSD.  (*Id.* at 7, 9 and 32).

A review of the ALJ's decision reveals that far from ignoring or failing to consider Ms. Matthews's PTSD, the ALJ discussed it, along with her depression, and determined that they did not significantly limit her mental ability to perform basic work activities and were therefore not severe.  (Doc. 5 at 22-23). The Court determines that substantial evidence supports the ALJ's determination that Ms.

Matthews's PTSD was not a severe impairment.

Furthermore, because step two was resolved in Ms. Matthew's favor, any error by the ALJ in determining that her PTSD or depression was not severe is harmless. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

### C.   Medical Evidence

#### 1.   Legal Standards

In assessing a disability claim, an ALJ may rely on "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995.) The deference the Commissioner affords physician opinions is dependant upon the classification of the physician. The opinion of a treating doctor is generally entitled to the greatest weight. *Id*. ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830.

"The opinion of a treating physician is given deference because 'he is

17

employed to cure and has a greater opportunity to know and observe the patient as an individual.' " *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). "However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Id. See also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.").

Opinions of treating physicians may only be rejected under certain circumstances. *Lester*, 81 F.3d at 830. To discount an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons." *Id*. To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "The ALJ must do more than offer his conclusions. He must set

18

forth his own interpretations and explain why they, rather than the doctors' are correct." *Reddick,* 157 F.3d at 725. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831. However, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

### 2.   Analysis

#### a.   Frederick Miller, D.O.

Ms. Matthews argues that the ALJ improperly evaluated the opinions of Frederick Miller, D.O., by ignoring his objective findings"which fully supported the statements of [Ms. Matthews]"  and his opinion "that Kara could not return to work."  (Doc. 8 at 26).  Dr. Miller provided treatment to Ms. Matthews from May 6, 2011, through May 7, 2014.  (Doc. 5 at 534-96).

Ms. Matthews' argues that the ALJ ignored or improperly rejected various findings from Dr. Miller's treatment notes including, among others, the following: his May 31, 2011, opinion that Ms. Matthews could not return to work until cleared by him (*Id.* at 530); him noting on May 6, 2011, that straight leg raising causes pulling in Ms. Matthews' lumbosacral area and confirming possible numbness

19

down Ms. Matthews' lateral left thigh and leg (*Id.* at 534); him ordering an x-ray taken on May 6, 2011, revealing L4-5 and L5-S1 degenerative disc disease as well as associated facet arthropathy (*Id.* at 533); him noting on May 16, 2011, that Ms. Miller was continuing to have low back pain especially into the left lumbosacral area with some radiation into the buttock (*Id.* at 532); him noting on August 6, 2012, that Ms. Miller had numbness in her right leg and partial inability to dorsiflex her toes (*Id.* at 522); him confirming on January 23, 2013, Ms. Matthews experiencing sciatica on the left side with pain in the lumbosacral joint on the left and numbness in the right leg (*Id.* at 512); him noting on April 4, 2013, that Ms. Miller was continuing to experience sciatica on her left side with numbness in the right side of her leg and continuing her on Neurontin but increasing her dose from 200 mg to 300 mg to 600 mg and finally 900 mg per day (*Id.* at 565); him confirming on July 31, 2013, that Ms. Matthews was continuing to experience sciatica on the left side and numbness and again increasing her Neurontin from 900 mg to 1200 mg per day in an effort to decreasing her pain and help her sleep (*Id.* at 566); him noting on March 31, 2014, Ms. Matthews experiencing pain mainly in the left leg with her barely bing able to mover her toes on the left side (*Id.* at 590); him noting on May 7, 2014, that Ms. Matthews has chronic back pain with sciatica down the left side of her leg and thigh along with peripheral neuropathy and

20

numbness in both feet confirmed by monofilament testing (*Id.* at 533).

The Commissioner argues that although the ALJ is required to consider all of the evidence in the record the ALJ is not required to discuss every piece of evidence in the record. (Doc. 12 at 11). The Commissioner also argues the ALJ is only required to explain why "significant probative evidence" has been rejected and that the ALJ properly did so. (*Id.*). The Commissioner further argues that the ALJ did consider Dr. Miller's May 31, 2011 opinion that Ms. Matthews not return to work until "cleared" by him, but she also provided specific and legitimate reasons for giving this opinion little weight. (*Id.* at 9-10).

Turning first to Dr. Miller's opinion that Ms. Matthews could not return to work until cleared by him, this opinion is contradicted by the opinions of Drs. Belleville, Doubek, Fernandez, Harper, and Schofield, who all are of the opinion that she does not have disabling limitations. (Doc. 5 at 128-30, 137-39, 146-47, 452-65, 483-86, 494-95). The ALJ decided to give Dr. Miller's opinion "little weight" because "it did not include functional limitation and it was drafted in the context of workers' compensation and the claimant's then current job." (*Id.* at 26). An ALJ may discredit treating physician's opinions that are conclusory, brief, unsupported by the record as a whole or objective medical findings. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2001). "The ALJ can meet this

burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).

Dr. Miller's opinion that Ms. Matthews should not return to work until released by him is set forth on a prescription slip. (Doc. 5 at 530). Dr. Miller's prescription slip did not include any functional limitations that he imposed on Ms. Matthews that would preclude her from working. (*Id.*). That same day, Dr. Miller examined Ms. Matthews and his treatment note for that examination states that Ms. Matthews is a "patient of mine who continues to complain of pain in the lumbosacral area. It appears as though there is less radiation at this time into the buttock; however, she says the pain is still significant and debilitating." (*Id.* at 531) (emphasis added). However, like the prescription slip, Dr. Miller's treatment note does not set forth any functional limitations imposed by Ms. Matthews' complaints of debilitating pain nor does it contain any objective medical findings in support Ms. Matthews' subjective complaint of debilitating pain. Therefore, the Court determines that this reason the ALJ gave for affording Dr. Miller's opinion little weight is a specific, legitimate reason supported by substantial evidence.

Next, the fact that Dr. Miller may have rendered this opinion on the basis that it was drafted in the context of a workers' compensation claim is not a specific,

legitimate reason for giving his opinion little weight.  *Lester v. Chater*, 81 F.3d 821,

832 (9th Cir. 1995) (holding that the ALJ erred in rejecting a physician's reports

because they "were clearly obtained by the claimant's attorney for the purpose of

litigation," and stating that "[t]he purpose for which medical reports are obtained

does not provide a legitimate basis for rejecting them");  *Booth v. Barnhart*, 181

F.Supp.2d 1099, 1105 (C.D. Cal. 2002) (notwithstanding differences between

workers' compensation claims and disability claims under the Social Security Act,

the ALJ may not disregard a physician's medical opinion simply because it was

initially elicited in a state workers' compensation proceeding).  However, because

the ALJ did provide a specific, legitimate reason for giving Dr. Miller's opinion

little weight, this error is harmless.

Finally, the ALJ's giving little weight to Dr. Miller's opinion because it was

related only to Ms. Matthews' job at the time she was injured is a specific,

legitimate reason.  It was reasonable for the ALJ to infer that Dr. Miller's opinion

was limited to her being unable to work at the job she was engaged in at the time

she was injured because Dr. Miller faxed his prescription slip to the Montana State

Fund, Ms. Matthews' employers workers' compensation insurer, and further by the

fact that Dr. Miller expressly advised Ms. Matthews on July 31, 2013, that "I have

not done social security determinations for 10 years now at least."  (Doc. 5 at 530

23

and 566). These two factors lead the Court to conclude that when Dr. Miller

rendered his opinion he was focused on her time of injury employment, not all

employment for which Ms. Matthews may have been able to perform.

In relation to the negative findings that Dr. Miller noted in his treatment notes

but are not set forth in ALJ's decision, Ms. Matthews argues that these findings

"fully supported the statements of [Ms. Matthews]."  The essence of Ms. Matthews'

argument is that Dr. Miller's findings supported her credibility and the ALJ erred in

not taking these findings into consideration in making her credibility determination.

The Commissioner argues the absence of a discussion of Dr. Miller's findings does

not mean that the ALJ failed to consider his findings.

The Commissioner cites *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d

1393, 1396 (9th Cir. 1984), as authority for the proposition that while an ALJ is

required to consider all evidence presented, she must only explain why "significant

probative evidence" has been rejected. (Doc. 12 at 11).  Here, the ALJ did not

discuss the vast majority of negative findings Dr. Miller made that relate to Ms.

Matthews' claim of low back pain, pain radiating from her low back into her lower

extremities and numbness in the legs and feet.  The Court determines that Dr.

Miller's negative findings constitute "significant probative evidence" of Ms.

Matthews claimed disabling limitations and that the ALJ failed to provide any

24

explanation of why these negative findings were rejected.  The Court therefore finds

that the ALJ committed legal error when she failed to explain why Dr. Miller's

negative findings were rejected.

### b.  Ronald Peterson, M.D.

Ronald Peterson, M.D., conducted an independent medical examination of

Ms. Matthews on October 27, 2011, in connection with her workers' compensation

claim.  (Doc. 5 at 467-74).  Dr. Peterson was of the opinion that Ms. Matthews "was

precluded from her work as a janitor due to such work requiring prolonged

standing, bending and lifting."  (*Id.* at 26).  The ALJ considered Dr. Peterson's

opinion gave it "minimal weight" because "it was performed in the context of a

workers' compensation claim and did not include specific functional limitations or

abilities."  (*Id.*)  The ALJ also stated that Dr. Peterson's "opinion that [Ms.

Matthews] could not perform prolonged bending, standing, or lifting is not

supported by Dr. Peterson's observations that the claimant had full range of motion,

normal gait and posture, and no muscle atrophy."  (*Id.*)

Ms. Matthews mentions Dr. Peterson in her opening brief (Doc. 8 at 7-8, 24-

25) and her reply brief (Doc. 13 at 4, 10).  Ms. Matthews argues that the ALJ

improperly weighed Dr. Peterson's opinion because "Defendant failed to provide

the Court with any opinion by a physician that full range of motion, no atrophy, and

normal gait and posture are objective findings that allow the ALJ to reject the above referenced objective findings from Dr. Peterson."  (Doc. 13 at 10).

The Commissioner argues that the ALJ properly weighed Dr. Peterson's opinion because his opinion that she could not perform prolonged bending, standing, or lifting was inconsistent with his own physical findings that she had full range of motion, no atrophy, and normal gait and posture.

Dr. Peterson is an examining physician whose opinion that Ms. Matthews was not capable of performing her job as a janitor was contradicted like Dr. Miller's opinion above.  Therefore, in order to reject Dr. Peterson's opinion, the ALJ was required to set forth a specific and legitimate reason for doing so.  *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).  An ALJ may properly discount a physician's opinions that are in conflict with treatment records or are unsupported by objective clinical findings.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (conflict between treating physician's assessment and clinical notes justifies rejection of assessment).

As stated above, an ALJ may not disregard a physician's opinion simply because it was conducted within the context of a workers' compensation claim. *Lester*, 81 F.3d at 832 ("[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them").  Medical opinions formed in the

26

context of worker's compensation claims are not binding on an ALJ because of the difference in standards between workers' compensation and Social Security disability determinations.  However, an ALJ may not disregard such an opinion solely on the basis that it was initially elicited in a workers' compensation proceeding.  *Booth*, 181 F.Supp.2d at 1105.

However, the Court finds that the ALJ's error in rejecting Dr. Peterson's opinion based on its genesis in a workers' compensation proceeding is harmless. The Court finds that the ALJ did not err in weighing Dr. Peterson's opinion because there is substantial evidence supporting the ALJ conclusion that Dr. Peterson's opinions as to Ms. Matthews' postural and lifting limitations were in conflict with his findings that the she had full range of motion, normal gait and posture, and no muscle atrophy.  (Doc. 5 at 469).  Ms. Matthews argues that the ALJ was required to find that another physician to opine that full range of motion, no atrophy, and normal gate and posture were in themselves objective findings to allow the ALJ to reject Dr. Peterson's opinion which supported her claim of disability.  (Doc. 13 at 10-11).  Ms. Matthews does not cite any authority for this argument.  Dr. Peterson's opinion was contradicted, therefore, the ALJ needed only to provide a specific and legitimate reason to afford his opinion little weight.  The ALJ's finding of an inconsistency in Dr. Peterson's records was a specific and legitimate reason to

27

reject his opinion, and was therefore not in error.

### D.     Friends and Family Testimony

#### 1.     Legal Standards

"Lay testimony as to a claimant's symptoms is competent evidence which the [ALJ] must take into account, unless he expressly determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.' " *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).  Competent lay witness testimony "cannot be disregarded without comment." *Id*. (emphasis in original).  The ALJ is not, however, required to discuss every witness's testimony on an individualized, witness-by-witness basis.  *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).  "[I]f the ALJ gives germane reasons for rejecting the testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id*.

#### 2.     Analysis

Ms. Matthews asserts that the ALJ erred when she chose to "ignore" the statements from Leonard Allgain, Danielle Swan, and Cherise Schultz.  (*Id.* at 19).  However, Ms. Matthews' provided no argument in support of this bald assertion, but instead chose to devote a single sentence in her opening brief in support of her

claim of error.  (*Id.*).

The Court's review of the ALJ's decision reveals that the ALJ did not ignore these statements rather she gave them little weight because they "are inconsistent with the objective medical evidence cited at length herein showing the claimant generally had a normal gait, normal musculoskeletal functioning, and near normal neurological functioning during the period at issue."  (Doc. 5 at 28).  Inconsistency with the medical evidence is a germane reason to reject lay witness testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  The Court concludes the ALJ provided a germane reason supported by substantial evidence for giving these statements little weight.

### E.    Hypothetical

#### 1.    Legal Standards

"In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' " *Buck v. Berryhhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).  It is also proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record.  *Bayless v.* Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir.1989)).

#### 2.    Analysis

29

Ms. Matters argues that "In order for the vocational expert's testimony to have any value, the hypothetical must set forth all of a plaintiff's impairments, specifically including pain." (Doc. 8 at 33). Although this is a correct statement of the law, Ms. Matthews fails to state which of her impairments or limitations the ALJ omitted from the hypothetical to the vocational expert (VE). Ms. Matthews also states that "The vocational expert testified at the time of the hear that an individual off task 20% of the day or week would be unable to perform any substantial gainful activity." (*Id.*) However, Ms. Matthews fails to make any argument about how this statement relates to her claim.

It is true that the ALJ posed a hypothetical question to the VE that included the limitation that the hypothetical individual would be off task 20 to 25% of an 8-hour day or 40-hour workweek, and the VE testified that such a hypothetical individual would not be able to perform Ms. Matthews' past jobs, nor would there be any jobs in the national economy that such a hypothetical individual could perform. (Doc. 5 at 117-18). However, the ALJ decided that there was not substantial evidence to support this hypothetical when she determined that Ms. Matthews had the capacity to perform her past work as a housing inspector and bus monitor and other work as a bench assembler, office helper, and a photocopy machine operator. (*Id.* at 29-30).

30

**F.     Remand for Further Proceedings**

In light of the ALJ's errors in evaluating Ms. Matthews' credibility and in evaluating Dr. Miller's statements, the ALJ may have to re-assess Ms. Matthews' RFC, depending on the ALJ's findings in accordance with the Court's mandate.  In such an event, the ALJ should consider on remand whether different hypothetical statements need to be posed to the VE after properly evaluating Ms. Matthews' credibility and Dr. Miller's statements.  The Court further directs that the ALJ assure that all of Ms. Matthews' medically determinable impairments are considered in assessing her RFC.  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (holding that  "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' ").

**VII.     FINDINGS AND RECOMMENDATION**

The Court **FINDS**:

1.     The ALJ's determination is based on legal error because the ALJ failed to make specific findings as to what of Ms. Matthews' testimony she found incredible.

2.     The ALJ committed legal error in rejecting the opinions of Drs. Miller and Peterson because they were formed in the context of a workers' compensation proceeding, but said error is harmless.

3.     The ALJ's findings that Dr. Miller's opinion did not include functional limitation and was only in the context of her current job were specific,

31

legitimate reasons for giving Dr. Miller's opinion little weight.

4.     The ALJ committed legal error when she failed to explain why Dr. Miller's negative findings were rejected.

5.     The ALJ found a specific and legitimate reason supported by substantial evidence to disregard Dr. Peterson's opinion based on an inconsistency in the medical records.

6.     The ALJ provided a germane reason supported by substantial evidence for disregarding the statements of lay witnesses Leonard Allgain, Danielle Swan, and Cherise Schultz.

7.     The ALJ's questions to the vocational expert were not legal error.

The Court **RECOMMENDS**:

1.     The action be remanded for the ALJ to re-assess Ms. Matthews' credibility and to reexamine Dr. Miller's negative findings, and to adjust or reconsider Ms. Matthews' RFC accordingly.

2.     The ALJ should consider on remand whether different hypothetical statements need to be posed to the VE after properly evaluating Ms. Matthews' credibility and Dr. Miller's statements.

3.     The ALJ must consider all of Ms. Matthews' medically determinable impairments in assessing her residual functional capacity.


**NOTICE OF RIGHT TO OBJECT TO FINDINGS AND RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written

objections to these Findings and Recommendations within fourteen (14) days of the

date entered as indicated on the Notice of Electronic Filing.  A district judge will

make a de novo determination of those portions of the Findings and

Recommendations to which objection is made.  The district judge may accept,

reject, or modify, in whole or in part, the Findings and Recommendations.  Failure

to timely file written objections may bar a de novo determination by the district

judge.

DATED this 27th day of February 2018.

John Johnston
United States Magistrate Judge